*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID WILLIAM GRAY,

Defendant-Appellant.

UNPUBLISHED
March 13, 2026
10:43 AM

No. 364589
Huron Circuit Court
LC No. 2022-306773-FC

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration of a person under 13 years of age); and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under 13 years of age). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to mandatory life imprisonment without parole (LWOP) under MCL 750.520b(2)(c) for each CSC-I conviction and 19 to 50 years' imprisonment for each CSC-II conviction. We affirm.

## I. FACTUAL OVERVIEW

Defendant, aged 50 at the time of trial, was convicted of sexually assaulting his biological daughters, BS and AS, from approximately 2007 until 2009, in his Huron County residences. The prosecution presented evidence that defendant sexually assaulted BS, aged 22 at the time of trial, on multiple occasions from ages six to eight and assaulted AS, aged 17 at the time of trial, during an episode when she was three years old. The sexual assaults began after defendant and his former wife separated and alternated visitation every two weeks. The assaults stopped after defendant's parenting time became supervised. However, the incidents were not disclosed until 2021, when AS wrote about the assaults as part of an assignment for her high school English class, and her

-1-

teacher reported AS's disclosure. Defendant was subsequently arrested and, after waiving his *Miranda*[1] rights, confessed that he sexually assaulted BS and AS.

At trial, defendant took the stand and ardently denied sexually assaulting BS or AS in any manner. Defendant acknowledged that he admitted sexually assaulting both daughters during the police interview. But defendant maintained his innocence at trial and claimed that the police trooper's method of interviewing him caused him to falsely confess under pressure.

On appeal from his resulting convictions, defendant moved for an order remanding this matter to the trial court for an evidentiary hearing and decision on whether he was denied effective assistance of counsel in the lower court proceedings, which this Court granted.[2] After conducting a *Ginther*[3] hearing, the trial court found that defendant's trial counsel was not ineffective and denied his motion for resentencing.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court abused its discretion by denying his motion for resentencing on the basis that defense counsel was ineffective for failing to advise him of the deadline to accept a favorable plea offer, which would have allowed him to avoid LWOP sentences for his CSC-I convictions and receive a mandatory 25-year minimum sentence pursuant to MCL 750.520b(2)(b). We disagree.

We review a trial court's denial of a motion for resentencing for an abuse of discretion. See *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Boshell*, 337 Mich App 322, 339; 975 NW2d 72 (2021) (quotation marks and citation omitted).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). We review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and it is defendant's burden to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). A

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Gray*, unpublished order of the Court of Appeals, entered January 11, 2024 (Docket No. 364589).

[3] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

defendant also has the burden to establish the factual predicate for an ineffective-assistance-of-counsel claim.  *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

"Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement."  *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). "Defense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice."  *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994).  To demonstrate prejudice with respect to ineffective assistance of counsel in the plea-bargaining process, the " 'defendant must show the outcome of the plea process would have been different with competent advice.' "  *Douglas*, 496 Mich at 592, quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "The proper remedy for ineffective assistance of counsel during plea negotiations will depend on the circumstances of the case, but it could potentially entail resentencing or requiring a rejected plea to be reoffered."  *White*, 331 Mich App at 148.

We agree with the trial court that defendant has not established that defense counsel was ineffective in this regard.  It is undisputed that in February 2022, the prosecution offered defendant a plea bargain that allowed him to plead guilty to all charges with the penalty provision of MCL 750.520b(2)(b), which requires a mandatory 25-year minimum sentence.  During the *Ginther* hearing, defendant acknowledged that defense counsel informed him of the plea offer and the consequences of not accepting it, and that he had been aware of the offer since March 2022. Defense counsel testified that he remembered this "face-to-face" discussion with defendant about the plea offer "very, very clearly."  Defense counsel explained that if defendant accepted the plea offer, he would receive a mandatory minimum sentence of 25 years instead of LWOP.  Defendant declined the plea offer and maintained his innocence "throughout the entire time" that defense counsel represented him.[4]  Further, according to defense counsel, "[a]t no point did he say that he wanted to take the plea."

Defendant now argues, however, that defense counsel did not inform him that he had to accept the plea offer within 21 days of his June 13, 2022 arraignment, as opposed to the trial court's general plea cutoff date of September 12, 2022.  Significantly, as the trial court emphasized, the transcript of the June 13, 2022 arraignment makes it clear that the prosecutor explained that the offer was for defendant to plead guilty to all four charges of criminal sexual conduct with a mandatory 25-year sentence and, in exchange, the prosecution would not file an amended sentence enhancement to seek LWOP.  However, if the plea was rejected, the prosecution would file the amendment within the required 21 days, there would be no other offer, and "it is life without

---

[4] Although defendant maintained his innocence during discussions with defense counsel, we note that defense counsel testified at the *Ginther* hearing that he arranged for defendant to undergo a polygraph examination, and that the polygrapher told him that defendant admitted all of the allegations contained in the police report during the very beginning of the set-up for the polygraph examination.  When defense counsel testified about asking defendant what happened at the polygraph examination, he said defendant indicated that he once again shut down as a result of anxiety resulting from being accused of a crime, similar to when he confessed to police, i.e., defendant suggested that he confessed falsely as a result of anxiety.

parole." Defendant was in the courtroom. Defense counsel responded that he "had these discussions with [defendant] and [defendant] is well aware of that."

The trial court credited defense counsel's *Ginther* testimony that he discussed the plea offer with defendant before the arraignment; that he met with defendant regularly, including the day before the trial court's general plea cutoff date; and that defendant never indicated that he wanted to accept the plea offer. The trial court noted defense counsel's billing statements supporting that defense counsel communicated with defendant, *inter alia*, before the arraignment, the day after the arraignment, within the 21-day window set by the prosecutor, and the day before the final pretrial. There is no basis for this Court to interfere with the trial court's determination that defense counsel was credible. "To the extent defendant's testimony conflicts with trial counsel's testimony at the *Ginther* hearing, we defer to the trial court's finding that trial counsel was more credible." *White*, 331 Mich App at 154.

Further, while defendant belatedly argues that he would have accepted the plea offer if he knew the expiration date, it is clear from the testimony of both defense counsel and defendant that defendant continuously maintained his innocence throughout the proceedings and continued to do so during the *Ginther* hearing. Defendant's stance in this regard further supports that it is unlikely that defendant gave any indication that he wished to plead guilty regardless of the deadline or that he failed to do so because of inadequate advice by defense counsel. In other words, this record establishes that defendant was aware of the consequences of his choice to reject the plea, as explained by defense counsel (and the prosecutor), so as to enable him to make an informed choice, despite his claimed confusion regarding the date that the plea offer expired. See *Jackson*, 203 Mich App at 614. Thus, defendant has not established that defense counsel was ineffective in this regard.

Other testimony provided by defendant at the *Ginther* hearing is likewise not fully supportive of the argument that he would have accepted the plea. At no point in time did he testify that he told his attorney to accept the plea offer. He did testify that he told defense counsel that he wanted to "pretty much, more than likely, take this plea," but he never testified that he actually told his attorney he wished to accept the plea. Instead, defendant testified that he asked if his attorney could talk to the prosecutor to get a better plea, i.e., a plea with a minimum sentence of less than 25 years, and his attorney said no. At that point, he indicated that his attorney told him they had until the following day to accept the plea, yet defendant never suggested that he told defense counsel that day, or the following day, that he wished to accept the plea.

In sum, defendant has not established that defense counsel's actions related to the plea negotiations were objectively unreasonable or prejudicial. See *Nix*, 301 Mich App at 207. Defendant's dissatisfaction with his ultimate mandatory LWOP sentences does not establish that defense counsel was ineffective, and defendant is not entitled to resentencing on this basis.

### III. OTHER-ACTS EVIDENCE

Defendant next argues that he should be granted a new trial because of the erroneous admission of other-acts evidence, namely, evidence of his prior sexual assault of his younger sister when they were in their adolescence. He contends that the evidence was not admissible under MCL 768.27a; that MCL 768.27a violates separation-of-powers principles; and that even if there

was a valid statutory basis for the admission, the evidence was improperly admitted on cross-examination. Defendant alternatively argues that his trial counsel was ineffective for calling his sister as a defense witness, thereby opening the door to the other-acts evidence. We disagree.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 252. Decisions concerning the scope of cross-examination are also reviewed for an abuse of discretion. *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

Although the trial court granted the prosecution's motion in limine regarding the other-acts evidence, the prosecutor ultimately rested its case-in-chief without calling defendant's sister as a witness. Nonetheless, defendant's sister testified favorably for the defense on direct examination. On cross-examination, however, defendant's sister agreed that when she first spoke with the investigating trooper about her nieces' allegations, she responded, "That brings back too many memories." Defendant's sister told the trooper that defendant molested her for approximately five years, from when she was 11 years old until she moved out of her mother's house at age 16. She said defendant digitally penetrated her vagina at least one time when he was 15 or 16 years old, but their mother "brushed it under the rug."

"The Legislature enacted MCL 768.27a to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *People v Muniz*, 343 Mich App 437, 457; 997 NW2d 325 (2022) (quotation marks and citation omitted). MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." " 'Listed offense' means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722," MCL 768.27a(2)(a), and " '[m]inor' means an individual less than 18 years of age," MCL 768.27a(2)(b). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[5] "[A] defendant's propensity to commit a crime makes it more probable that he committed the charged offense." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). "Thus, the language in MCL 768.27a allowing admission of another listed offense 'for its bearing on any matter to which it is relevant' permits the use of evidence to show

---

[5] The Michigan Rules of Evidence were substantially amended after defendant's trial. See Administrative Order No. 2021-10, 512 Mich lxiii (2023). We will rely on the preamendment version of the evidentiary rules in effect at the time of defendant's trial and until December 31, 2023.

a defendant's character and propensity to commit the charged crime, precisely that which MRE 404(b) precludes." *Id*.

The charged offenses and the other acts involving defendant's sister all qualify as listed offenses against a minor. See MCL 768.27a(2). The other-acts evidence was relevant to defendant's propensity to sexually assault underaged females to whom he had access because of their familial relationship and therefore assisted the jury in weighing BS's and AS's credibility. The defense repeatedly sought to impugn their credibility by, for example, suggesting that it was inconsistent for them to claim that defendant had sexually assaulted them, yet fail to disclose anything to anyone until over a decade later; highlighting that there was no physical evidence or witnesses; and suggesting that, due to the acrimonious relationship between defendant and their mother, their mother urged them to falsely accuse defendant. The defense also claimed that although defendant confessed to the police that he assaulted his daughters, he did so because he felt pressured by the trooper's method of interrogating him, rather than because he actually committed the offenses. Thus, the probative value of the other-acts evidence was high.

However, evidence offered under MCL 768.27a is still subject to MRE 403, which provides in pertinent part that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403;[6] *Watkins*, 491 Mich at 481. MRE 403 is not, however, intended to exclude evidence that is simply "prejudicial," because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. Unfair prejudice exists when there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (quotation marks and citation omitted). *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). When applying MRE 403 to evidence in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Courts should consider the following factors when deciding whether to exclude other-acts evidence under MRE 403 as being overly prejudicial:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

---

[6] Again, relying upon the preamendment version of this evidentiary rule in effect at the time of defendant's trial.

When weighing the probative value of other-acts evidence, courts should consider the extent to which the other-acts evidence supports the victims' credibility and rebuts any defense attack on the victims' credibility. *Id*. at 492.

Defendant challenges the first factor from *Watkins*—similarity between the other acts and the charged sexual assault—by emphasizing that the only similarities were "that they both involved sex, minors, and family members." Beyond that, defendant contends the acts were starkly dissimilar because he was a minor at the time of his alleged acts of sexual assault on his sister, while the instant charges involved a father in his thirties assaulting his very young daughters. We disagree and conclude that this factor weighs in favor of admissibility. The other acts and the current offenses are " 'of the same general category,' because they involve[d] sex crimes . . . against children." See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (citation omitted). Defendant's sister and his daughters were all minors when the sexual conduct occurred. Defendant had access to each minor in his home because of the familial relationship. The charged offenses involved unwanted sexual contact, which corresponded to the unwanted sexual contact involved in the other acts against his sister. Although there were differences, most notably that the victim in the other acts was defendant's younger sister and occurred when defendant was a teenager, whereas the charged crimes involved defendant sexually assaulting his minor daughters when he was in his thirties, each situation involved defendant's opportunistic sexual advance against a minor female entrusted to be around him because of their familial relationship.

Defendant also challenges the second factor from *Watkins*, i.e., the temporal proximity of the other-acts evidence to the charged offense. The last criminal sexual conduct against defendant's sister apparently occurred in approximately 1991, and the charged offenses occurred from approximately 2007 until 2009. Thus, the previous assault occurred 16 or 17 years earlier. While the text of MCL 768.27a does not contain a temporal limitation, the Michigan Supreme Court has held that "[t]he list of 'considerations' in *Watkins* provides a tool to facilitate, not a standard to supplant," analysis under MRE 403, and "it remains the court's 'responsibility' to carry out such an analysis in determining whether to exclude MCL 768.27a evidence under that rule." *People v Uribe*, 499 Mich 921, 922; 878 NW2d 474 (2016) (citation omitted). Due to the length of time between the 1991 incident and the charged offenses, we find that the temporal proximity element of *Watkins* favors defendant.

Concerning the third *Watkins* factor—the infrequency of the other acts—defendant argues that the evidence demonstrated only one assault against his sister. But the testimony was unclear on this point. Defendant's sister confirmed telling the trooper that defendant molested her between the ages of 11 and 16, at which point she moved out of the house. She further confirmed that defendant penetrated her with his fingers. When asked how many times that occurred in the five-year period, defendant's sister answered, "I can remember once." When asked again on redirect examination whether it occurred "one time," she repeated, "That's what I recall." While defendant's view of this testimony is not unreasonable, it could also be interpreted as indicating that she could only recollect one specific instance of digital penetration. She did not specify whether other forms of "molestation" occurred. Due to the lack of a clear record on this issue, we find that the third Watkins factor is neutral in this matter.

The fourth *Watkins* factor requires consideration of whether there were intervening acts. The parties have not identified any relevant intervening acts that would either support or

undermine admissibility of the other-acts evidence. Defendant acknowledges that the fifth *Watkins* factor, the reliability of the evidence regarding the occurrence of the other act, supports admission of the other-acts evidence given that he admitted touching his sister inappropriately when he was a teenager.

Concerning whether additional evidence beyond the complainants' and defendant's testimony was needed (the last *Watkins* factor), defendant argues that the prosecution's decision not to call his sister in its case-in-chief demonstrates that her testimony was unnecessary. We disagree. Regardless of the prosecution's view of the strength of its case without the sister's testimony, the other-acts evidence was an important consideration for the jury in assessing the credibility of the allegations, particularly after she was called as a witness to support the defense. As described earlier, the defense repeatedly attacked BS's and AS's credibility through a variety of methods and it offered a facially reasonable, though ultimately unpersuasive, explanation for why defendant would confess to offenses he denied committing at trial. Considering the absence of corroborating physical evidence, the lengthy delay in the girls' disclosures, and the unusual manner in which their allegations came to light, the other-acts evidence was not wholly unnecessary, meaning this last factor also favors a finding that the evidence did not violate MRE 403.

Considering the high probative value of the other-acts evidence, its probative value was not substantially outweighed by the danger of unfair prejudice. The other-acts evidence was probative of defendant's intent and propensity to sexually assault young female relatives. Moreover, in its final instructions, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting the potential for unfair prejudice. Because the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion by allowing the evidence at trial.

Defendant further argues that his sister's other-acts testimony should not have been admitted because MCL 768.27a is unconstitutional and therefore invalid. In defendant's view, the statute violates separation-of-powers principles by invading the judiciary's exclusive authority to "write rules of evidence." But, as defendant acknowledges, his position on this issue is in direct conflict with the Michigan Supreme Court's decision in *Watkins*, 491 Mich at 472-477, wherein the Court declared MCL 768.27a a valid enactment of substantive law that does not abridge the rulemaking authority vested in the judiciary. This Court is bound to follow precedent established by our Supreme Court, *People v Armstrong*, 344 Mich App 286, 299; 1 NW3d 299 (2022), and therefore need not address this issue further.

Lastly, defendant argues that admission of the other-acts testimony on cross-examination was improper because it exceeded the scope of defense counsel's direct examination. At the time of trial, MRE 611(c) provided: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination." The appropriate scope of cross-examination is left to the trial court's sound discretion. *People v Grisham*, 125 Mich App 280, 284; 335 NW2d 680 (1983). Additionally, when a witness denies certain conduct on direct examination, impeachment with other-acts evidence concerning such conduct may be appropriate. *People v Wilder*, 502 Mich 57, 63-64; 917 NW2d 276 (2018).

Whether defendant's assault of his sister 16 or 17 years earlier was beyond the scope of cross-examination is a somewhat close question, but as noted above, trial courts have the discretion to allow testimony on cross-examination that exceeds the scope of direct under MRE 611(c). Defendant's sister's direct testimony primarily concerned her recollections about defendant's divorce, the animosity between defendant and his ex-wife, and her observations of defendant's interactions with his children. The interactions between defendant and his sister were not explored except as they related to those topics, and she did not express an opinion about the veracity of her nieces' allegations. Nonetheless, as noted above, defendant's argument is flawed because the rules of evidence permit, but do not *require*, the trial court to limit cross-examination "with respect to matters not testified to on direct examination." MRE 611(c). See also *People v Davis*, 337 Mich App 67, 77; 972 NW2d 304 (2021) (observing that the word "may" generally conveys a permissive action).

Although defense counsel did not explore defendant's sexual assault of his sister on direct examination, it was within the court's discretion to permit questioning on that topic on cross-examination to the extent it was relevant. MRE 611(c). It is apparent that defense counsel's purpose for calling defendant's sister as a witness was to convey to the jury that the allegations against defendant were improbable given, for instance, that defendant's sister had never seen defendant act inappropriately toward the children, nor observed any of the children appear frightened of defendant. That defendant's sister herself had been sexually assaulted by defendant as a minor impeached the unspoken implication that she had no reason to believe defendant would commit similar assaults against his minor daughters. As the prosecution points out on appeal, cross-examination extends to matters "which may tend to contradict, weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Bell*, 88 Mich App 345, 349; 276 NW2d 605 (1979), quoting *People v Dellabonda*, 265 Mich 486, 499-500; 251 NW 594 (1933) (quotation marks omitted). The prosecutor's questioning about defendant's past sexual assault of his sister did just that. Moreover, for the reasons explained earlier, it was not an abuse of discretion to admit the other-acts evidence under MCL 768.27a, thus allowing such evidence to be used to show defendant's intent and propensity to engage in similar conduct and thereby make it more probable that he committed the charged offenses. *Watkins*, 491 Mich at 470. Because the evidence was relevant and otherwise admissible, the trial court's overruling of defendant's objection was a principled outcome and not an abuse of discretion.

Defendant's related ineffective-assistance-of-counsel claim is likewise without merit. Preliminarily, this theory was not identified in defendant's motion to remand for an evidentiary hearing, which was limited to his argument regarding counsel's performance in the plea-bargaining process. Thus, our review is limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

The decision regarding whether to call a witness is a matter of trial strategy, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and counsel has wide discretion in matters of trial strategy, *Heft*, 299 Mich App at 83. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it "assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). However, while deference is given to counsel's strategic decisions, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be

sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citations omitted).

In this case, the defense theory was that defendant did nothing wrong and only admitted to sexually assaulting his daughters because of the police trooper's interview techniques and his anxiety. Defendant's sister clearly provided testimony that was harmful to the defense. Defendant's contention that it was objectively unreasonable for defense counsel to call a witness whom he knew defendant sexually assaulted as a minor is persuasive at first glance. But in evaluating claims of ineffective assistance, the reviewing court must "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did[.]" *Cullen v Pinholster*, 563 US 170, 196; 131 S Ct 1388; 179 L Ed 2d 557 (2011) (quotation marks and citation omitted). Opening the door to other-acts testimony may have been a questionable decision, but there was at least one strategic reason that could have supported the decision. After the prosecution rested without introducing the other-acts evidence, defendant's intent to testify in his own defense was placed on the record. Knowing that defendant would be subject to cross-examination, during which the prosecutor would almost certainly ask defendant about other criminal sexual conduct, and call his sister as a witness in rebuttal if he denied it, defense counsel may have hoped to lessen the damage of defendant's history by calling defendant's sister as a defense witness, thus presenting her as someone who supported defendant despite his assault years earlier. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The evidence against defendant certainly created a difficult case for defense counsel, and we cannot conclude in these circumstances that defendant has overcome the presumption that counsel's decision was a product of sound strategic considerations. An unsuccessful strategic decision does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Perhaps more importantly, defendant cannot demonstrate a reasonable probability that, but for counsel's decision to call defendant's sister as a defense witness, the outcome of the trial would have been different. BS and AS both described the precise manner in which defendant sexually assaulted them and explained why they did not disclose the abuse until many years after the fact. AS, despite her tender age at the time she was assaulted, recalled specific details of the day in question that bolstered her credibility. And, most incriminatingly, defendant admitted assaulting both girls when he was interrogated by the police. At trial, defendant tried to justify what he claimed to be a false confession, but the police trooper's testimony undermined that explanation by pointing out that confirmation bias is a recognized risk in relation to interviewing children but is not generally a concern with respect to adult suspects. This trooper also observed that defendant did not simply agree with all of her suggestions, further cutting against defendant's claim that he felt pressured to make untrue admissions. The reasonable inference from the jury's verdict is that it did not find defendant's exculpatory explanation credible. Additionally, it is almost certain that defendant's earlier criminal sexual conduct against his sister would have been presented to the jury in any event, either through his own admissions on cross-examination or rebuttal evidence offered by the prosecution if defendant denied that history. Thus, defendant cannot demonstrate that, but for defense counsel's decision to call defendant's sister as a defense witness, the outcome of the trial would have been different.

IV.  CRUEL OR UNUSUAL PUNISHMENT

Next, defendant argues that the mandatory LWOP sentences violated the cruel-or-unusual-punishment clause of Michigan's Constitution because they were made applicable to his CSC-I convictions as a result of his conduct as a juvenile.  We disagree.

We review questions of constitutional law de novo.  *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021).  As defendant observes, he was sentenced to mandatory LWOP for his CSC-I convictions under MCL 750.520b(2)(c), which provides:

> [A] violation that is committed by an individual 18 years of age or older against an individual less than 13 years of age, [is punishable] by imprisonment for life without the possibility of parole if the person was previously convicted of a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age or a violation of law of the United States, another state or political subdivision substantially corresponding to a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age.

Stated more simply, LWOP is mandated "for a defendant over the age of 17 who commits CSC-I involving a victim less than 13 years of age when the defendant was previously convicted of a similar sex crime with a victim less than 13 years of age."  *People v Brown*, 294 Mich App 377, 389-390; 811 NW2d 531 (2011).

Defendant was subject to this sentencing enhancement not because of his assault of his sister, which apparently went unreported and did not result in criminal prosecution, but rather because of a plea-based conviction of CSC-II, MCL 750.520c(1)(a) (sexual contact with child under 13 years of age), in 1990.  The 1990 conviction involved an incident with his minor nephew that occurred when defendant was 16 years old.  Defendant does not dispute that because of this conviction, MCL 750.520b(2)(c) was applicable to his CSC-I convictions.  Instead, he argues that his mandatory LWOP sentences amount to cruel or unusual punishment because the enhancement required by the statute was triggered by conduct he engaged in as a minor.

In pertinent part, Article 1, § 16, of Michigan's 1963 Constitution prohibits "cruel or unusual punishment," which has been interpreted to include "unusually excessive imprisonment."  *People v Parks*, 510 Mich 225, 241; 987 NW2d 161 (2022).  As defendant observes, determining whether a term of imprisonment is considered excessive is not a static consideration, but rather must account for " 'evolving standards of decency that mark the progress of a maturing society.' "  *Id*., quoting *People v Lorentzen*, 387 Mich 167, 179; 194 NW2d 827 (1972).  "Inherent in this standard is the understanding that as society progresses, punishments that were once acceptable can later be considered cruel or unusual."  *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654); slip op at 8.

The progression of federal caselaw concerning the Eighth Amendment prohibition of cruel and unusual punishment in relation to juvenile offenders is now well known.  Beginning in *Roper v Simmons*, 543 US 551, 568; 125 S Ct 1183; 161 L Ed 2d 1 (2005), the United States Supreme Court held death-penalty sentences imposed on juveniles unconstitutional.  Several years later, it

held that the Eighth Amendment barred LWOP sentences for nonhomicide offenses committed by someone under the age of 18. *Graham v Florida*, 560 US 48, 74-75; 130 S Ct 2011; 176 L Ed 2d 825 (2010). These decisions then led to the Supreme Court's ruling in *Miller v Alabama*, 567 US 460, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012), wherein it found that *mandatory* LWOP sentences for juvenile offenders run afoul of the prohibition against cruel and unusual punishment.

The law in Michigan has followed this same trend. For instance, in 2014, the Legislature enacted a new sentencing scheme applicable to juveniles who would otherwise face a mandatory LWOP sentence, under which the sentencing court must engage in an individualized analysis to determine whether to sentence the juvenile to a term of years or LWOP. See MCL 769.25 and MCL 769.25a. And in *Parks*, the Michigan Supreme Court determined that Michigan's cruel-or-unusual-punishment clause, which is broader than its federal counterpart,[7] bars a mandatory LWOP sentence for an offender who was 18 years old at the time of their offense. *Parks*, 510 Mich at 232. As noted in that case, a mandatory LWOP sentence "lacks proportionality because it fails to take into account the mitigating circumstances of youth, specifically late-adolescent brain development." *Id*. That ruling was recently extended to 19- and 20-year-old offenders in *Taylor*, ___ Mich at ___; slip op at 2.

Each of these cases was driven, at least in part, by recognition of the differences between juvenile (or, in the case of *Taylor*, young adult) offenders and adult offenders that leave the former less deserving of the harshest penalties. *Miller*, 567 US at 471-472, 477-478; *Graham*, 560 US at 68; *Roper*, 543 US at 569-570; *Taylor*, ___ Mich at ___; slip op at 2; *Parks*, 510 Mich at 247-259. Juveniles lack maturity and a fully developed sense of responsibility—characteristics that are more common in and expected of adults—without which the juvenile is more likely to engage in "impetuous and ill-considered actions and decisions." *Roper*, 543 US at 569. Juveniles are also more likely to succumb to outside pressures and negative influences, having "less control, or less experience with control, over their own environment." *Id*. And a juvenile's overall character "is not as well formed as that of an adult," making their personality traits "more transitory, less fixed." *Id*. at 570. These concerns are not strictly limited to those under the age of 18, as young adults continue to experience significant brain, behavioral, and psychological development that impact these factors throughout late adolescence. *Taylor*, ___ Mich at ___, ___-___; slip op at 2, 15-17; *Parks*, 510 Mich at 249.

Defendant relies on the rationale supporting these decisions to argue that his LWOP sentences are cruel or unusual punishment because the "triggering event" was an offense he committed as a juvenile, yet LWOP was ordered mandatorily, without individualized consideration. To satisfy the requirements of Article 1, § 16, of Michigan's 1963 Constitution, a sentence must be proportional. *Parks*, 510 Mich at 241. "[I]n evaluating the proportionality of sentences under the 'cruel or unusual punishment' clause," this Court must consider four things:

> (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a

---

[7] *Parks*, 510 Mich at 242-243.

> criterion specifically "rooted in Michigan's legal traditions . . . ." [*Id*. at 242, quoting *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992).]

As a legislatively mandated punishment, the LWOP sentences required by MCL 750.520b(2)(c) are entitled to a presumption of proportionality and validity, *Brown*, 294 Mich App at 390, and defendant bears the burden of proving otherwise, *People v Konopka (On Remand)*, 309 Mich App 345, 360; 869 NW2d 651 (2015). Notably, this Court has already held that a mandatory LWOP sentence under MCL 750.520b(2)(c) is not disproportionate and does not violate the prohibition against cruel or unusual punishment, albeit without considering the question in the context of the first offense having been committed when the defendant was a juvenile. *Brown*, 294 Mich App at 390-392.

Beginning with the relationship between the gravity of the offense and the severity of the sentence, CSC-I involving a victim under the age of 13 is a "grave" offense. *Id*. at 391. Defendant concedes as much, describing the offense as "abhorrent." MCL 750.520b(2)(c) recognizes this fact by imposing LWOP, the most severe penalty available in this state. See *Parks*, 510 Mich at 257. In the context of sentencing a juvenile, LWOP has been viewed as all the more severe because the juvenile's young age necessarily means he or she will "serve more time and spend a greater percentage of their lives behind prison walls than similarly situated older adult offenders." *Id*. The same cannot be said of defendant, who was 50 years old at the time of sentencing.

In its analysis of this factor, the *Parks* Court emphasized the transient characteristics of youth as a basis to conclude that "automatic condemnation to die in prison at 18" was cruel given that the sentencing court was unable to consider such a defendant's lower level of culpability and higher prospects of reforming. *Id*. at 258-259. Defendant's attempt to rely on the same reasoning is unpersuasive. The decisions regarding sentencing of juveniles and youthful offenders are premised on the understanding that these individuals are entitled to individualized sentencing because it is just as likely that their heinous acts were at least partially attributable to the practical effects of their limited neurological and psychological development as to being irredeemably depraved. To the extent defendant may have been influenced by characteristics of youth when he committed the sexual assault that resulted in his 1990 conviction, such a conclusion is severely undermined by the fact that defendant engaged in the same conduct in his thirties, when the scientific principles underlying the evolution of juvenile sentencing law suggest an individual is no longer plagued by immaturity, impetuosity, and inability to appreciate the risks or consequences of their actions. In other words, the fact that defendant chose to commit the grave offense of sexually assaulting his own minor children over the course of two years when he was in his thirties, after already having committed another grave offense against a minor while in his own minority, demonstrates substantial culpability, rather than transient characteristics likely to evolve with time.

Turning to the sentences imposed in Michigan for other offenses, defendant argues that mandatory LWOP is generally reserved for homicide offenses and is not warranted when the underlying conduct did not result in death. Because mandatory LWOP is the harshest penalty available in Michigan, it is necessarily reserved for "those whose criminal culpability mandates automatic, permanent removal from society." *Id*. at 260. To be sure, criminal sexual conduct punishable by mandatory LWOP is factually distinguishable from an offense that leads to death. *Brown*, 294 Mich App at 390. But we do not find that distinction persuasive here.

-13-

Criminal sexual conduct has long been recognized as among the most detested crimes. See, e.g., *Coker v Georgia*, 433 US 584, 597; 97 S Ct 2861; 53 L Ed 2d 982 (1977) (opinion by WHITE, J.) (describing "rape" of an adult as "highly reprehensible, both in a moral sense and in its almost total contempt for personal integrity and autonomy of the . . . victim and for the latter's privilege of choosing those with whom intimate relationships are to be established"); *id*. at 603 (POWELL, J., concurring in part and dissenting in part) ("Some victims are so grievously injured physically or psychologically that life is beyond repair."); *id*. at 607-608 (BURGER, C.J., dissenting) (characterizing rape as "one of the most egregiously brutal acts one human being can inflict upon another"). The reprehensibility of the offense is even worse when the victim is a child. In *Kennedy v Louisiana*, 554 US 407, 412, 435; 128 S Ct 2641; 171 L Ed 2d 525 (2008), mod by 554 US 945 (2008), a case involving a father's rape of his eight-year-old stepdaughter, the Court discussed considerations that favor punishing rape of a child severely:

> Here the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood. For this reason, we should be most reluctant to rely upon the language of the plurality in *Coker*, which posited that, for the victim of rape, "life may not be nearly so happy as it was," but it is not beyond repair. Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape. [Citations omitted, quoting *Coker*, 433 US at 598.]

In mandating LWOP under MCL 750.520b(2)(c), the Legislature narrowly identified only a small class of sexual offenders who would be subject to the mandatory sentence. The statute is applicable only to an adult who has been previously convicted of specified sexual offenses committed against someone less than 13 years of age who is subsequently convicted of first-degree sexual penetration, again committed against an individual less than 13 years of age. MCL 750.520b(2)(c). Thus, it is only those individuals who have committed the most serious form of criminal sexual conduct (penetration involving an aggravating factor), perpetrated against an inherently vulnerable victim (a victim under the age of 13), that are subject to mandatory LWOP, and even then only when the offender has a history of sexual offenses against children (raising recidivism concerns). Considering the narrow class of offenses governed by the statute, the necessity of a repeat offense for the statute to apply, and the long-lasting impacts such offenders inflict upon their victims, we conclude that the subclass of CSC-I to which MCL 750.520b(2)(c) applies is reasonably comparable, in terms of egregiousness, to other offenses that require mandatory LWOP.

Concerning the third factor in the proportionality analysis, sentences imposed in other jurisdictions for the same offense, defendant focuses exclusively on how other jurisdictions punish first-degree murder. Having failed to address the merits of this factor, defendant has clearly not carried his burden of demonstrating that it favors finding MCL 750.520b(2)(c) unconstitutionally disproportionate, cruel, or unusual. In contrast, this Court has previously identified several other

jurisdictions that authorize or mandate life imprisonment, often without parole eligibility, for varying forms of sexual offenses.[8] *Brown*, 294 Mich App at 391-392.

The last factor, the goal of rehabilitation, does not favor mandatory LWOP sentences because it leaves the offender without opportunity to reform while incarcerated. *Parks*, 510 Mich at 264-265. But we find that point far less significant than in the average case when, as here, mandatory LWOP requires that the defendant have been previously convicted of another sex crime against a child under the age of 13. See *Coker*, 433 US at 608 (BURGER, C.J., dissenting) ("Surely recidivism, especially the repeated commission of heinous crimes, is a factor which may properly be weighed as an aggravating circumstance, permitting the imposition of a punishment more severe than for one isolated offense."). Because MCL 750.520b(2)(c) applies only to repeat offenders, those who are subject to mandatory LWOP have already been given a meaningful opportunity for rehabilitation and proven themselves unwilling or unable to do so.

Balancing these considerations, defendant has not demonstrated MCL 750.520b(2)(c) requires imposition of an unconstitutionally cruel or unusual punishment.

V. INCREASED PENALTY ON THE BASIS OF FACTS NOT FOUND BY A JURY

Lastly, defendant argues that his LWOP sentences are impermissible under the federal Constitution because they were required on the basis of facts not found by a jury beyond a reasonable doubt. We disagree.

Defendant did not preserve appellate review of this issue by raising it before the trial court. See *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). We review unpreserved claims for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *People v Anderson*, 322 Mich App 622, 635; 912 NW2d 607 (2018). "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253. The defendant has the burden of establishing entitlement to relief under plain-error review. *Carines*, 460 Mich at 763.

Under the United States Constitution's Fifth and Sixth Amendments, "virtually any fact that increase[s] the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Erlinger v United States*, 602 US 821, 822; 144 S Ct 1840; 219 L Ed 2d 451 (2024) (quotation marks and citation omitted) (alteration in original). However, as defendant concedes, the United States Supreme Court has specifically held that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v New Jersey*, 530 US 466,

---

[8] A number of states have gone as far as to make rape of a child a capital offense, although the United States Supreme Court has since found the death penalty impermissible for child rape not resulting in death. See generally *Kennedy*, 554 US 407.

490; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (emphasis added). Our Supreme Court has recognized this exception. See *People v McCuller*, 479 Mich 672, 687-688; 739 NW2d 563 (2007). While defendant urges this Court to ignore the Supreme Court's prior-conviction exception, "[i]t is an elementary proposition that 'state courts are bound by United States Supreme Court decisions construing federal law,' including the Constitution." *People v Lewis*, 501 Mich 1, 7; 903 NW2d 816 (2017) (citation omitted). Consequently, defendant cannot establish plain error.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman